O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEANOR VALENZUELA, | Case No. EDCV 12-327-OP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (ECF Nos. 7, 8.)

[2]  As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

1

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

      (1)    Whether the Administrative Law Judge ("ALJ") properly considered the opinion of Plaintiff's treating physician; and

      (2)    Whether there is a inconsistency between the ALJ's finding that Plaintiff can perform the jobs of merchandise processor and mail order packer, and the Dictionary of Occupational Titles ("DOT") description of those occupations;

      (3)    Whether the ALJ properly determined if Plaintiff's activities of daily living establish the ability to perform full-time competitive employment; and

      (4)    Whether the ALJ properly considered the lay witness testimony.

(JS at 4.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (citation omitted).  The Court must review the record as a whole and consider adverse as well as

1  supporting evidence. <u>Green v. Heckler</u>, 803 F.2d 528, 529-30 (9th Cir. 1986).

2  Where evidence is susceptible of more than one rational interpretation, the

3  Commissioner's decision must be upheld. <u>Gallant v. Heckler</u>, 753 F.2d 1450,

4  1452 (9th Cir. 1984).

**III.**

**DISCUSSION**

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of poorly

controlled hypertension; ankle pain; leg pain secondary to old fracture; history of

plantar fasciitis and calcaneal spur; obesity; alcohol dependence and abuse; major

depression; and post-traumatic stress disorder ("PTSD").  (Administrative Record

("AR") at 384.)  The ALJ concluded that Plaintiff has the residual functional

capacity ("RFC") to perform light work, including the ability to lift and/or carry

ten pounds frequently and twenty pounds occasionally; sit, stand, and/or walk for

six hours in an eight-hour workday with normal breaks; occasionally climb, stoop,

balance, crawl, bend, and/or crouch; with the limitation to unskilled, non-detailed,

and non-public work.  (<u>Id.</u> at 386.)

Relying on the testimony of the vocational expert ("VE"), the ALJ

determined that given Plaintiff's age, education, work experience, and RFC, she is

capable of doing her past relevant work as a mail order packager as actually

performed (DOT 920.587-018), and merchandise processor as generally performed

(DOT No. 209.587-034).  (AR at 392.)

**B.    The ALJ Properly Considered the Opinion of Plaintiff's Treating**
**       Physician.**

**       1.    Background.**

On February 8, 2010, Plaintiff's treating physician, David Aryanpur, M.D.,

completed a two page check-box form titled "Work Capacity Evaluation

1    (Mental)." (Id. at 377-78.)  In that form, Dr. Aryanpur indicated that Plaintiff had

2    "extreme" limitations in her ability to perform activities within a schedule,

3    maintain regular attendance, and be punctual; and to interact appropriately with

4    the general public.  (Id. at 377.)  Dr. Aryanpur noted "marked" limitations in

5    Plaintiff's ability to maintain attention and concentration for extended periods, get

6    along with co-workers or peers without distracting them or exhibiting behavioral

7    extremes; respond appropriately to changes in the work setting; be aware of

8    normal hazards and take appropriate precautions; and set realistic goals or make

9    plans independently of others.  (Id. at 377-78.)  Dr. Aryanpur opined that Plaintiff

10   would be absent from work two days or more per month.  (Id. at 378.)

11          On January 27, 2011, Dr. Aryanpur completed another two page check-box

12   form titled "Medical Opinion to Do Work-Related Activities (Mental)."  (Id. at

13   545-46.)  In that form, Dr. Aryanpur indicated that Plaintiff was unable to meet

14   competitive standards with regard to her ability to:  maintain attention for two

15   hours; maintain regular attendance and punctuality; complete a normal

16   workday/workweek without interruptions from psychologically-based symptoms;

17   perform at a consistent pace without an unreasonable number and length of rest

18   periods; accept instructions and respond appropriately to criticism from

19   supervisors; get along with co-workers or peers without unduly distracting them or

20   exhibiting behavior extremes; deal with normal work stress; understand and

21   remember detailed instructions; carry out detailed instructions; and deal with the

22   stress of semiskilled and unskilled work.  (Id.)  Dr. Aryanpur found Plaintiff

23   seriously limited, but not precluded with regard to her ability to:  remember work-

24   like procedures; sustain an ordinary routine without special supervision; work in

25   coordination with or proximity to others without being unduly distracted; respond

26   appropriately to changes in a routine work setting; be aware of normal hazards and

27   take appropriate precautions; maintain socially appropriate behavior; travel in

28

4

1   unfamiliar places; and use public transportation.  (Id.)  Dr. Aryanpur also indicated
2   that Plaintiff was "grooming and hygiene impaired," and indicated "Depressive
3   and anxious symptoms impairing focus/concentration and ability to work
4   gainfully." (Id. at 546.)  Dr. Aryanpur noted sleep disturbances, flashbacks,
5   anxiety, and low energy as additional reasons why Plaintiff would have difficulty
6   working at a regular job on a sustained basis, and stated that Plaintiff would be
7   absent from work as a result of her impairments more than four days per month.
8   (Id.)

9          The ALJ discussed Dr. Aryanpur's opinion, as follows:

10         The undersigned has read and considered the mental work
11         capacity evaluation completed by David Aryanopur [sic], M.D., dated
12         February 8, 2010.  These statements of disability express an opinion on
13         an issue reserved to the Commissioner and the undersigned disregards
14         this conclusion regarding the claimant's disability based on 20 CFR
15         416.927(e).

16         In determining the claimant's mental residual functional
17         capacities, the undersigned has considered, but does not give significant
18         weight to, the opinion of the treating source, Dr. Aryanpour, [sic] as
19         documented in mental work capacity evaluation.  . . . In this case, the
20         opinion of this treating source is not given controlling weight because
21         his opinion does not document significant positive objective clinical or
22         diagnostic findings to support the assessed functional limitations and
23         because these extreme functional limitations are inconsistent with the
24         record as a whole.

25               . . . .

26         Dr. Aryanpour's [sic] assessment of functional limitations is not
27         well supported with objective evidence, and his assessment is not

28

                                        5

1    consistent with the record as a whole.  Although, his assessment is
2    consistent at the initial intake when she first started mental treatments,
3    it is not consistent with her current records from 2009 to 2010.  Further,
4    there is nothing in the medical treatment records to suggest, for example,
5    that any validity testing was performed by Dr. Aryanpour [sic].  In
6    addition, there is nothing in the medical treatment records to suggest that
7    any treating source considered whether the claimant's subjective
8    symptoms may have been motivated in whole or in part by secondary
9    gain.

10          The undersigned has also read and considered the more recent and
11   updated medical opinion regarding the claimant's mental ability to do
12   work-related activities completed by Dr. Aryanpour [sic] on January 27,
13   2011.  Again, this checklist-style form appears to have been completed
14   as an accommodations to the claimant and includes only conclusions
15   regarding functional limitations without any rational for these
16   conclusions.  The undersigned finds this evidence has no probative
17   value because any objective evidence does not support it.  Further, even
18   Dr. Aryanpour's [sic] own recent findings do not support this opinion.
19   (Id. at 390 (citations omitted).)

20          Plaintiff contends that Dr. Aryanpur's opinions are "fully supported by the
21   record" and that the "ALJ just chose to ignore these objective findings."  (JS at 9.)
22   She claims that Dr. Aryanpur's treating notes show that Plaintiff would indeed
23   have problems in the areas set forth by Dr. Aryanpur, including the global
24   assessment of functioning ("GAF") score 50, indicating she would have "serious
25   problems in occupational functioning."  (Id. at 10.)  She also contends the ALJ
26   failed to provide an "explicit explanation, supported by evidence in the record, of
27   the weight given to Plaintiff's treating physicians' medical opinions," and failed to

28

1   provide specific and legitimate reasons for implicitly rejecting those opinions, and
2   without indicating which aspects of the opinions and findings that he rejected or
3   accepted. (Id. at 10-12.)  The Court disagrees.

4       It is well-established in the Ninth Circuit that a treating physician's opinions
5   are entitled to special weight, because a treating physician is employed to cure and
6   has a greater opportunity to know and observe the patient as an individual.
7   McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating
8   physician's opinion is not, however, necessarily conclusive as to either a physical
9   condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,
10  751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on
11  whether it is supported by sufficient medical data and is consistent with other
12  evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating
13  physician's opinion is uncontroverted by another doctor, it may be rejected only
14  for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
15  1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating
16  physician's opinion is controverted, it may be rejected only if the ALJ makes
17  findings setting forth specific and legitimate reasons that are based on the
18  substantial evidence of record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.
19  2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th
20  Cir. 1987).

21      However, the Ninth Circuit also has held that "[t]he ALJ need not accept the
22  opinion of any physician, including a treating physician, if that opinion is brief,
23  conclusory, and inadequately supported by clinical findings."  Thomas, 278 F.3d
24  at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.
25  1992).  A treating or examining physician's opinion based on the plaintiff's own
26  complaints may be disregarded if the plaintiff's complaints have been properly
27  discounted.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir.

28

7

1  1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews

2  v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  Additionally, "[w]here the opinion

3  of the claimant's treating physician is contradicted, and the opinion of a

4  nontreating source is based on independent clinical findings that differ from those

5  of the treating physician, the opinion of the nontreating source may itself be

6  substantial evidence; it is then solely the province of the ALJ to resolve the

7  conflict."  Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v.

8  Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

### 2.      Dr. Aryanpur's Opinion Was Inconsistent with the Record as a Whole and Not Supported by Substantial Evidence.

The ALJ reviewed and discussed Plaintiff's mental health records from the

Department of Mental Health, dating from April 21, 2009, to February 8, 2010.

(AR at 388-89.)  The ALJ noted that Plaintiff had cancelled or failed to show up

for doctor appointments on at least eight occasions between May 4, 2009, and

January 7, 2010.  (Id. at 388 & n.2 (citation omitted).)  The ALJ stated that this

could either be an indication of an unwillingness to do what is necessary to

improve her condition, or that her symptoms are not as severe as she reports.  (Id.

at 388.)

The ALJ also summarized the treatment notes from the Department of

Mental Health, stating that Plaintiff had been diagnosed at intake with major

depression disorder with psychosis in partial to full remission, PTSD, and alcohol

dependence,[3] with a GAF score of 52.[4]  (Id. (citation omitted).)  The ALJ also

---

[3]  At intake, Plaintiff reported drinking 12-18 beers daily.  (AR at 365.)

[4]  A GAF score between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty

(continued...)

noted that the mental status examination at that time revealed Plaintiff was "normal, average, and had no delusional or suicidal thoughts; she was conservatively treated with medication."  (Id. at 389.)

After a previous remand, Plaintiff submitted additional mental health records dated from February 4, 2010, to August 5, 2011.  (Id. at 388.)  The ALJ also summarized those records, noting monthly mental health visits, and continuing conservative treatment with the medication, Abilify.  (Id. at 389.)  The ALJ also pointed out that while Plaintiff had the same diagnoses, she was also reported as doing "a little bit better," with "good to fair response to medication" and that her thought processes were "normal."  (Id. (citations omitted).)  A mental status exam on August 1, 2011, showed that she was "'normal,' 'within normal limits,' 'appropriate,' 'neutral,' and [she] had good compliance and response to medication."  (Id. (citations omitted).)  On March 17, 2010, a progress note indicated that Plaintiff was "'experiencing difficulty performing daily living functions because of consumption of alcohol.'"  And, on June 30, 2011, she denied alcohol or drug use to the consultative examiner.  (Id. (citations omitted).)

As a threshold matter, the Commissioner has no obligation to credit or even consider GAF scores in the disability determination.  See 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings."); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating

---

[4](...continued)

in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  Diagnostic and Statistical Manual of Mental Disorders 34 (Am. Psychiatric Ass'n ed., 4th ed. 2000).

9

the RFC, it is not essential to the RFC's accuracy.").  Here, the ALJ noted the limited evidentiary value of the score and the fact that the score tends to reveal only "snapshots of impaired and improved behavior."  (AR at 388 & n.3.) Moreover, Plaintiff's score is not sufficiently low that it raises any serious question about the ALJ's determination that Plaintiff's mental condition did not significantly limit her ability to work.

In his decision, the ALJ also set forth a detailed summary of Plaintiff's mental health evidence, including the state agency physicians' reports, and the consultative examination report conducted by psychiatrist Estelle Toby Goldstein, M.D., who performed an examination on June 30, 2011, and to whose findings the ALJ gave "great weight."  (Id. at 390 (citing id. at 538-43).)  Dr. Goldstein noted that Plaintiff's chief complaints were depression, sadness, crying, and thoughts of past molestation.  (Id. (citation omitted).)  Other than noting a depressed mood, Dr. Goldstein found Plaintiff to be "overall normal."  (Id. at 391.)  Dr. Goldstein noted Plaintiff could maintain personal care and do some household chores, manage finances, interact with friends and family, make coffee, watch television, prepare meals, and otherwise care for her personal needs.  (Id. at 390-91 (citing id. at 538-43).)  Dr. Goldstein diagnosed Plaintiff with a major depressive disorder and PTSD, and opined that Plaintiff had no mental limitations besides a mild impairment in her ability to maintain concentration and attention, persistence and pace.  (Id. (citation omitted).)

The ALJ also reviewed the opinions of all the state agency physicians and consultative examiners, giving them "some great weight."  (Id. at 390.)  With regard to Plaintiff's mental health, this included the October 2008 consultative examination report of Romulado R. Rodriguez, M.D.  (Id. (citing id. at 283-89).) Dr. Rodriguez found Plaintiff had only slight to moderate limitations.  (Id. at 283-89.)  The ALJ also reviewed the October 2008 Psychiatric Review Technique

forms prepared by State agency physician, D.R. Conte, M.D., who indicated
Plaintiff had moderate limitations in maintaining concentration, persistence, and
pace, but otherwise had only mild or no limitations, and concluded that Plaintiff
could do unskilled, nondetailed, and nonpublic work.  (Id. at 390 (citing id at 320-
25).)  Giving Plaintiff the benefit of the doubt, the ALJ also took into
consideration Plaintiff's subjective complaints and gave her "a more restrictive
residual functional capacity than assessed by the consultative examiners."  (Id.)

        The Court finds that the ALJ fully and properly discounted the two check-
box forms prepared by Dr. Aryanpur, finding the very severe limitations listed on
that report were not supported by the medical record.  This is a specific and
legitimate reason for discounting the opinion of a treating physician.  Batson v.
Comm'r, 359 F.3d 1190, 1191 (9th Cir. 2004) (holding that the ALJ reasonably
accorded a treating physician opinion "minimal evidentiary weight" because "it
was in the form of a checklist [and] did not have supportive objective evidence");
see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)
(citing Thomas, 278 F.3d at 957) ("The ALJ need not accept the opinion of any
physician, including a treating physician, that is brief, conclusory, and
inadequately supported by the medical record.").  The ALJ also properly relied on
the consultative examiners' opinions.  Tonapetyan v. Halter, 242 F.3d 1144, 1149
(9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ
need not accept a treating physician's opinion that is conclusory and brief and
unsupported by clinical findings").

        Based on the foregoing, the Court finds that the foregoing reasons given by
the ALJ for discounting Dr. Aryanpur's opinions were specific and legitimate and
supported by substantial evidence of record.

/ / /

/ / /

11

## C.  There Was No Inconsistency Between the ALJ's Findings Regarding Plaintiff's Ability to Perform Past Relevant Work and the DOT.

Based on the testimony of a VE, the ALJ found that given Plaintiff's RFC, she is capable of performing her past relevant work as a merchandise processor as generally, but not actually performed; and as a mail order packer, as actually, but not generally performed.  (AR at 391.)  Plaintiff contends that these jobs, as described in the DOT, are inconsistent with her RFC because they both require the performance of detailed tasks, which is inconsistent with her limitation to nondetailed tasks, because they both require Level 2 reasoning skills.  (JS at 17-21.)  Plaintiff also claims the mail order packer position is inconsistent with her RFC because it is medium level work as generally performed.  (Id. at 21.)

### 1.  Level 2 Reasoning.

Plaintiff contends that the two jobs are inconsistent with her RFC limiting her to nondetailed tasks because they both require the performance of detailed tasks.

A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves."  Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).  Reasoning development is one of three divisions comprising the General Educational Development ("GED") Scale.[5]  DOT App. C. The DOT indicates that there are six levels of reasoning development.  Id.  Level 2 provides that the claimant will be able to "[a]pply commonsense understanding to

_____

[5]  The GED scale "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective.  Ordinarily, such education is obtained in elementary school, high school, or college.  However, it may be obtained from experience and self-study."  DOT App. C.

carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations." (See, e.g., DOT 209.587-034.)  Focusing on the fact that the word "detailed" is included in the definition of Level 2 jobs, Plaintiff contends she is limited to a reasoning Level 1, which provides that the claimant will "[a]pply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." (Id.)   The Court disagrees.

In Meissl, the court rejected a similar argument.  As explained by the court in Meissl, the Social Security Regulations contain only two categories of abilities in regard to understanding and remembering things:  "short and simple instructions" and "detailed" or "complex" instructions.  Meissl, 403 F. Supp. 2d at 984.  The DOT has many more gradations for measuring this ability, six altogether.  Id.  The court explained:

> To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail."  Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Id.

Furthermore, the term "uninvolved" in the DOT Level 2 explanation qualifies the term "detailed" and refutes any attempt to equate the Social Security Regulations' use of the term "detailed" with the DOT's use of that term.  Id.  The Meissl court also found that a plaintiff's RFC must be compared with the DOT's reasoning scale.  A reasoning level of one suggests the ability to perform slightly less than simple tasks that are in some sense repetitive.  For example, they include the job of counting cows as they come off a truck or tapping the lid of a can with a

stick.  Id.  The ability to perform simple, repetitive instructions, therefore, indicates a level of reasoning sophistication somewhere above Level 1.  See, e.g., Hackett v.  Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks").  The DOT's Level 2 definition provides that the job requires the understanding to carry out detailed instructions, with the specific caveat that the instructions be "uninvolved" – that is, not a high level of reasoning.  Meissl, 403 F. Supp. 2d at 985.

Here, the Court finds that the DOT's reasoning development Level 2 requirement does not conflict with the ALJ's prescribed limitation that Plaintiff could perform only nondetailed work.  See Meissl, 403 F. Supp. 2d at 984-85 (finding that reasoning development Level 2 does not conflict with the ALJ's prescribed limitation that plaintiff perform simple, routine tasks); see generally Hackett, 395 F.3d at 1176.  Plaintiff's attempt to distinguish the DOT's reasoning Level 2 classification from her RFC limitation to "nondetailed" work is without merit.  See Meissl, 403 F. Supp. 2d at 984-85; see also Eckard v. Astrue, 2010 WL 669895, at *8 (E.D. Cal. Feb. 29, 2012).

Accordingly, the Court finds that the ALJ sustained his burden of proving there is work in the economy that Plaintiff can perform.  Thus, there was no error.

## 2.   **Medium Level Work.**

Plaintiff claims that because the job of mail order packer is classified by the DOT as medium level work, her limitation to light work would exclude her from performing this position.  (JS at 21.)

The Administration may deny disability benefits when the claimant can perform the claimant's past relevant work as "actually performed," or as "usually" or "generally" performed.  Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).  Although the claimant has the burden of proving an inability to perform his or her

1  past relevant work, "the ALJ still has a duty to make the requisite factual findings
2  to support his [or her] conclusion." Id. at 844.  "To determine whether a claimant
3  has the residual capacity to perform his [or her] past relevant work, the
4  [Administration] must ascertain the demands of the claimant's former work and
5  then compare the demands with his [or her] present capacity ." Villa v. Heckler,
6  797 F.2d 794, 797-98 (9th Cir. 1986); see 20 C.F.R. § 404.1520(e).  The
7  Commissioner properly may deny benefits when the claimant can perform past
8  relevant work either as actually performed or as generally performed. Pinto, 249
9  F.3d at 845.  "Social Security Regulations name two sources of information that
10  may be used to define a claimant's past relevant work as actually performed: a
11  properly completed vocational report, SSR 82-61, and the claimant's own
12  testimony, SSR 82-41." Id.  The "best source for how a job is generally performed
13  is usually the Dictionary of Occupational Titles ." Id. at 846.

    Based on the testimony of the VE, the ALJ found that Plaintiff could
15  perform the job of mail order packer as *actually* performed, and that Plaintiff had
16  actually performed it at the light level.  (AR at 391-92.)  The ALJ was entitled to
17  rely on the VE's testimony regarding Plaintiff's past work as actually performed.
18  Moore v. Apfel, 216 F.3d 864, 869-70 (9th Cir. 2000).  Thus, the ALJ's step 4
19  determination was proper.  See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) (VE
20  may offer testimony in response to hypothetical question about whether person
21  with claimant's impairments can meet demands of claimant's previous work
22  "either as the claimant actually performed it or as generally performed in the
23  national economy").

    Moreover, even if the ALJ erred in finding that Plaintiff was capable of
25  performing the mail order packer job as actually performed, i.e., at the light level,
26  the error was harmless because the ALJ made the alternative finding that Plaintiff
27  could perform her past relevant work as merchandise processor as generally

15

performed, which, as generally performed, is classified by the DOT as light work. (AR at 391-92); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (harmless-error rule applies to review of administrative decisions regarding disability); see also Gallo v. Comm'r of Soc. Sec. Admin.., 449 F. App'x 648, 650 (9th Cir.2011) ("Because the ALJ satisfied his burden at Step 5 by relying on the VE's testimony about the Addresser job, any error that the ALJ may have committed by relying on the testimony about the 'credit checker' job was harmless" (citing Carmickle, 533 F.3d at 1162)).

Based on the foregoing, the Court finds that there was no error.

**D.   The ALJ Properly Determined Plaintiff's Activities of Daily Living Established Her Ability to Perform Full-Time Competitive Employment.**

In his decision, the ALJ stated the following regarding Plaintiff's activities of daily living:

> In addition to the claimant's testimony, the undersigned has read and considered the claimant's adult function report, dated August 5, 2008, and the statements of record and finds the claimant only credible to the extent that she can do the work described herein. The claimant stated she could do the following activities of daily living includ[ing]: watching television, preparing her own meals, taking care of her son, maintaining her personal care, doing household chores (i.e., laundry, washing dishes, sweeping, cleaning refrigerator and/or bathroom), shopping for groceries, driving or riding in a car, managing her own finances, and attending support groups. However, she described physical and mental limitations of lifting less than 10 pounds at a time and walking for only 30 minutes.

16

The undersigned notes some of the physical and mental abilities and social interactions required in order to perform the above-described activities of daily living are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in the activities of daily living, stated above, undermined the credibility of the claimant's allegations of functional limitations.

(AR at 386-87.)

Plaintiff contends that the ALJ erred in finding that because Plaintiff can engage in these activities of daily living, she is also capable of performing and sustaining full-time competitive employment. (JS at 27-30.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Once a claimant has presented medical evidence of an underlying impairment which could reasonably be expected to cause the symptoms alleged, the ALJ may only discredit the claimant's testimony regarding subjective pain by providing specific, clear, and convincing reasons for doing so. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991). An ALJ may properly consider "testimony from physicians . . . concerning the nature,

17

severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities.  See, e.g., Thomas, 278 F.3d at 958-59 (citation omitted).  An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms.  Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. 404.1529 (2005); Morgan, 169 F.3d at 600 (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack of side effects from prescribed medication).

Here, the ALJ provided clear and convincing reasons for finding Plaintiff's subjective complaints of impairment less than credible.

The ALJ cited Plaintiff's ability to engage in activities of daily living that require the same physical and mental abilities as those necessary to obtain and maintain employment.  (AR at 386-87.)  The ALJ noted that Plaintiff's ability to perform these activities is inconsistent with an incapacitating or debilitating

18

1   condition.  (Id.)  Daily activities may be grounds for an adverse credibility finding

2   "if a claimant is able to spend a substantial part of his day engaged in pursuits

3   involving the performance of physical functions that are transferable to a work

4   setting."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Stubbs-

5   Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (ALJ sufficiently

6   explained his reasons for discrediting claimant's testimony when he said that the

7   "record reflects that the claimant has normal activities of daily living, including

8   cooking, house cleaning, [and] doing laundry"); Burch v. Barnhart, 400 F.3d 676,

9   at 681 (9th Cir. 2005) (finding adverse credibility based on daily activities may be

10   proper "if a claimant engaged in numerous daily activities involving skills that

11   could be transferred to the workplace").  Thus, it was not error for the ALJ to

12   conclude that Plaintiff's ability to engage in daily activities such as those she

13   described in her adult function report and in her testimony at the hearing,

14   undermines her credibility as to functional limitations.

15       Furthermore, the ALJ did not rely on this factor alone.  He also noted that

16   Plaintiff's testimony and statements of record had been inconsistent.  (AR at 387.)

17   For instance, she testified she was dismissed from her last job, but she reported to

18   the consultative examiner that she had quit because of depression and pain.  (Id.)

19   She also denied any history of cigarette smoking, and illicit drug or alcohol use to

20   Dr. Panse, but the medical records as a whole clearly evidenced her "extensive

21   history" of alcohol abuse.  (Id.)  An ALJ may properly rely on inconsistencies in

22   the claimant's testimony to discredit her testimony.  Johnson, 60 F.3d at 1434;

23   Thomas, 278 F.3d at 958-59 (ALJ may properly rely on inconsistencies between

24   claimant's testimony and claimant's conduct and daily activities).

25       The ALJ also relied on the observations of the agency claims representative

26   who interviewed Plaintiff face-to-face and stated that Plaintiff was well groomed,

27   polite, and cooperative, and whose only apparent difficulties seemed to be with

28

19

1    standing and walking, as she was walking very slowly.[6]  (AR at 387 (citing id. at
2    150).)

3        Finally, to the extent the ALJ relied on the fact that the objective medical
4    evidence does not support Plaintiff's alleged severity of symptoms, although a
5    lack of objective medical evidence may not be the sole reason for discounting a
6    plaintiff's credibility, it is nonetheless a legitimate and relevant factor to be
7    considered.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Here, the
8    medical records indicated that Plaintiff's pain was "fair and under control," and
9    the ALJ surmised that her failure to show up for her mental health appointments
10   might be an indication that her symptoms are not as severe as she purports.  (AR at
11   388, 389 (citations omitted).)  The ALJ also noted that Plaintiff was treated
12   conservatively for her mental health problems and that her mental status
13   examinations showed she was doing well and responding to medication.  (Id. at
14   389 (citations omitted).)  These are valid reasons for discounting credibility.  Parra
15   v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (ALJ may discount claimant's
16   testimony based on conservative treatment); Tidwell, 161 F.3d at 602 (ALJ may
17   properly rely on lack of treatment and helpful medication); Johnson, 60 F.3d at
18   1432 (ALJ may properly rely on the fact that only conservative treatment has been
19   prescribed).

20       Based on the foregoing, the Court finds that the ALJ stated clear and
21   convincing reasons, supported by substantial evidence in the record, for rejecting
22   Plaintiff's credibility and, therefore, did not arbitrarily discredit her subjective
23   testimony.  Thus, relief is not warranted on this claim.
24   / / /
25
26
27       [6]  That report also indicated, without explanation, that Plaintiff had
28   difficulty "seeing."  (AR at 150.)

**E.    The ALJ Properly Considered the Lay Witness Testimony.**

Plaintiff contends that the ALJ failed to properly consider the lay witness testimony of Plaintiff's uncle, Ernest Valenzuela, who testified in an Adult Third Party Function Report that Plaintiff watches television; does light housework; takes care of her son; handles her personal care but does so very slowly and carefully; makes simple meals; does laundry and cleaning with assistance; shops for food an clothing; has no problem managing her money; has difficulties lifting, squatting, bending, standing, reaching, sitting, walking, kneeling, climbing stairs, completing tasks, and concentrating; cannot walk for more than a few minutes at a time, needing a ten to twenty minute break after doing so; struggles with following oral instructions; can follow written instructions; has difficulty handling stress and change; and her pain keeps her from being able to complete a task. (AR at 169-76.)

The ALJ found Mr. Valenzuela to be credible "only to the extent that the claimant can do the work described herein." (Id. at 387.)  The ALJ noted that the report "has very little probative value in that it mirrors the claimant's function report and allegations." (Id.)  He also noted:

> The claimant's uncle is not a medical professional, and as a lay witness, he is not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to her ability to work.  As the claimant's uncle, he has the motivation to be helpful to the claimant so she can receive benefits.  Further, the claimant's uncle's statements were not made under oath.  Therefore, the undersigned finds their assertions are not credible as they are not supported by any medically determined impairment.

(Id.)

21

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provide that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [his] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This applies equally to the sworn hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to *unsworn*[7] statements and letters of friends and relatives. See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000). If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467. The ALJ must provide "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ provided sufficient reasons germane to Plaintiff's uncle for rejecting his testimony.

The ALJ found that the testimony of Plaintiff's uncle mirrored her function report and allegations. (AR at 387.) Where, as here, the lay witness testimony mirrors the claimant's testimony, and the claimant is found to be not credible, the ALJ may reject the lay witness testimony for that reason alone. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (holding that ALJ gave a germane reason for rejecting claimant's wife's testimony where it was similar to claimant's own complaints that were properly rejected).

The ALJ also referred to Plaintiff's uncle's motivation as a family member

---

[7] Thus, the Court does not consider this a reason germane to this witness for discounting his testimony.

22

to be helpful so Plaintiff could receive benefits.  (AR at 387.)  An ALJ may reject a lay witness' testimony if the ALJ finds the witness to be biased.  See, e.g., Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (finding the ALJ's consideration of the claimant's prior girlfriend's close relationship with the plaintiff and desire to help him as a possible reason for bias was a reason germane to that witness).  However, "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." Smolen, 80 F.3d at 1289; see also Valentine, 574 F.3d at 694 (finding that being an interested party in the abstract was insufficient to reject a spouse's testimony).  Thus, the fact that Plaintiff's uncle has a motivation as her uncle to help her is not a sufficient reason germane to him for discrediting his testimony.

Furthermore, the ALJ rejected Plaintiff's uncle's testimony because he is not competent to make a diagnosis or argue the severity of Plaintiff's symptoms in relationship to her ability to work.  (AR at 387.)  An ALJ need not discuss "medical diagnoses" made by lay witnesses because they "are beyond the competence of lay witnesses and therefore do not constitute competent evidence." Nguyen, 100 F.3d at 1467 (citing 20 C.F.R. § 404.1513(a)).  "However, lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Id. (citations omitted).  Thus, the ALJ erred in finding Plaintiff's uncle incompetent to testify regarding the effect of Plaintiff's symptoms on her ability to work.

Nonetheless, because the ALJ provided at least one significant reason for rejecting Plaintiff's uncle's testimony that was germane to him, any error was harmless.  See Carmickle, 533 F.3d at 1162-63 (finding an error by the ALJ with respect to one or more factors in a credibility determination may be harmless if there "remains substantial evidence supporting the ALJ's conclusions" in that

regard).

Based on the foregoing, the Court finds that relief is not warranted on Plaintiff's claim.

## IV.

## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: November 6, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge

24